**Clifford J. PARRIS, Petitioner,**

v.

**STATE EMPLOYEES' RETIREMENT BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 17, 2009.

Decided Nov. 2, 2009.

---

Elliot A. Strokoff, Harrisburg, for petitioner.

Paul M. Stahlnecker, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Clifford J. Parris (Claimant) petitions for review of an order of the State Employees' Retirement Board (Board) denying Parris' request to be granted age 50 superannuation retirement benefits for his service with the Pennsylvania Department of Corrections (DOC) between December 1, 1983 and July 28, 2006. We affirm.

In this case of first impression, the Court is asked to interpret the definition of "correction officer" found in Section 5102 of the State Employees' Retirement Code (Retirement Code), 71 Pa.C.S. § 5102. Claimant argues that the definition should be construed liberally, in accordance with the General Assembly's intent, to include a Therapeutic Activities Worker Manager/Activities Coordinator.

Section 5102 of the Retirement Code defines "CORRECTION OFFICER" as:

Any full-time employee assigned to the Department of Corrections or the Department of Public Welfare whose principal duty is the care, custody and control of inmates or direct therapeutic treatment, care, custody and control of inmates of a penal or correctional institution, community treatment center, forensic unit in a State hospital or secure unit of a youth development center operated by the Department of Corrections or by the Department of Public Welfare.

Section 5102 defines "SUPERANNUATION AGE" as:

Any age upon accrual of 35 eligibility points or age 60, **except for** a member of the General Assembly, an enforcement officer, **a correction officer,** a psychiatric security aide, a Delaware River Port Authority policeman or an officer of the Pennsylvania State Police, **age 50,** and, except for a member with Class G, Class H, Class I, Class J, Class K, Class L, Class M or Class N service, age 55 upon accrual of 20 eligibility points.

Emphasis added.

Herein, Claimant became a member of the State Employees' Retirement System (SERS) on February 1, 1974, when he initially became employed by the DOC at SCI–Graterford as a Correction Officer Trainee and Therapeutic Recreational Services Trainee. Later, Claimant was employed as a Therapeutic Recreational Services Worker and Therapeutic Recreational Services Supervisor. He remained employed as such until December 1, 1983, when he was promoted to the DOC Central Office at SCI–Camp Hill into the position of Therapeutic Activities Worker Manager overseeing all of the activities departments at the DOC's institutions. Approximately one year later, Claimant's job title was changed to Activities Coordinator.

Claimant's Central Office position of Activities Coordinator required him to spend sometimes 4 to 5 days each week in vari-

ous DOC institutions where he: (1) monitored and attended sporting events; (2) assisted the activities staffs in developing activities and programs; (3) evaluated activities and programs; (4) performed auditing functions of the various activities and programs; and (5) sometimes conducted a program. During the time that Claimant spent in the various DOC institutions, he would often have contact with inmates.

During the period from December 1, 1983 through 1989, Claimant often spent anywhere from 3 to 5 days per week, including some weekends, in various DOC institutions performing his oversight and coordination of the activities offices and their programs at each of the institutions. Between 1989 and 1991, Claimant had an assistant to help him perform his oversight and coordination functions. Claimant and/or his assistant were required to be at the DOC Central Office at least 85% of the time. After the assistant was furloughed, Claimant had to staff the office alone and the sporting events that Claimant and his assistant monitored were stopped.

During this time period, Claimant continued to monitor other activities, created new activities to be implemented, and continued to do annual audits of activities at the various DOC institutions. These responsibilities required Claimant to be in various DOC institutions 2 to 3 days per week.

In 1993, the sporting events were reinstated requiring Claimant to spend an increased amount of time in the various DOC institutions. In addition to the sporting events, during the 1990s, Claimant was in charge of oversight for numerous other activities including entertainment programs, a music program, an art program, and fundraisers run by the activities departments at the various DOC institutions. By 2000, the sporting events were again

stopped and Claimant was assigned to work under the Director of Education where he was given the responsibility to evaluate the libraries in the DOC's 23 institutions.

Claimant oversaw the activities departments in all of the DOC's institutions as Activities Coordinator; however, he was not the direct line supervisor of the activities managers. The activities staffs, including the activities managers and specialists, at each institution were responsible for running the various programs and were responsible for the inmates participating in each program or activity.

The size of the activities offices at each institution varies according to the size of the institution. At most institutions, there is at least one activities manager and several activities specialists. The staff at each DOC institution was in charge of security related to the activities departments, not the Claimant.

No Central Office staff coordinators have responsibility for the care, custody and control of inmates. The job*position descriptions of age 50 eligible employees specifically state that they are responsible for direct care, custody and control of inmates. Claimant's job description as of June 2003, which was submitted by SERS, does not mention care, custody and control of inmates. The DOC has a process where employees can dispute their job position description.

Claimant terminated active state employment effective July 28, 2006, when he was furloughed from employment with the DOC Central Office. After an initial request for age 50 superannuation retirements benefits was denied by the Director of SERS Membership Services Division, Claimant filed a formal letter with SERS on August 2, 2006, requesting age 50 su-

perannuation retirement benefits. By letter dated August 28, 2006, SERS denied Claimant's request citing the definition of "correction officer" in the Retirement Code and stating its position that Claimant's employment as a Therapeutic Activities Worker Manager and Activities Coordinator did not meet said definition. Claimant filed a timely appeal of SERS' denial by letter dated September 6, 2006. The SERS Appeals Committee denied Claimant's request by letter dated November 22, 2006 and informed Claimant of his appeal rights to the Board. On December 13, 2006, Claimant filed a timely request for an administrative appeal and adjudication by the Board.

An administrative hearing was held on October 4, 2007 and November 20, 2007, before a hearing examiner. In support of his appeal, Claimant testified on his own behalf and presented the testimony of: (1) Timothy Musser, Human Resource Director of the DOC; (2) Edward G. Salerno, Corrections Activities Manager 1 at SCI–Retreat; (3) Warren Daniel, Corrections Activities Manager 2 at SCI–Cresson; and (4) Moe Kuhns, Retired Corrections Activities Manager 2. Claimant also submitted several exhibits into evidence. In opposition to the appeal, SERS presented the testimony of Gayle Martin, Administrative Assistant in the Bureau of Benefit Administration for SERS, and Debra Murphy, Director of Benefit Administration for SERS, as well as several exhibits.

■ Based on the evidence presented, the hearing examiner concluded that Claimant failed to meet his burden[1] of proving that he was a "correction officer" as defined by Section 5102 of the Retirement Code while serving as the Activities Coordinator in the DOC Central Office since December 1, 1983.[2] The hearing examiner pointed out that SERS does not dispute the fact that Claimant may have spent the majority of his time each week in DOC institutions and that he had contact with inmates during this time. The hearing examiner framed the dispute as whether or not spending a significant time in DOC institutions and having inmate contact while in those institutions qualified Claimant to be classified as a correction officer.

The hearing examiner concluded that spending time in DOC institutions and having inmate contact in the DOC institutions are not indicative of status as a correction officer as that term is defined by the Retirement Code. The hearing examiner rejected Claimant's contention that his principal duty was the direct therapeutic treatment, care, custody and control of all the inmates within the DOC as not accurate because Claimant had managers at the institutions most of the time. The hearing examiner concluded that the activities managers and the other activities staff at each individual DOC institution were the ones responsible for the direct therapeutic treatment, care, custody and control of the inmates in their respective institutions; therefore they are clearly correction officers entitled to the age 50 superannuation retirement service credit.

The hearing examiner also rejected Claimant's contention that the job descriptions for the positions of Corrections Activities Manager 1 and 2 supports the conclu-

1. "Claimant bears the burden of proof. It is well-established that the party who maintains the existence of certain facts must prove those facts." *Wingert v. State Employes' Retirement Board*, 138 Pa.Cmwlth. 43, 589 A.2d 269, 271 (1991).

2. The hearing examiner found that Claimant qualified for a total of 9.5698 years of service as age 50 retirement service under the Retirement Code for the period February 7, 1974 to December 1, 1983.

sion that his principal duty was to be responsible for the direct therapeutic treatment, care, custody and control of inmates within the DOC. The hearing examiner pointed out that Claimant was relying on selected portions of those job descriptions and that he failed to introduce into evidence his own job description to support his assertions.

The hearing examiner concluded further that Claimant's position with the DOC Central Office was that of an administrator and/or coordinator. He was in charge of creating and coordinating activities for inmates within the DOC. As such, Claimant did not have as his principal duty the direct therapeutic treatment, care, custody and control of inmates of a penal or correctional institution while serving as the Activities Coordinator at the DOC Central Office.

Therefore, the hearing examiner concluded that Claimant is not entitled to age 50 superannuation retirement service credit for the period from December 1, 1983 until July 28, 2006, and recommended to the Board that Claimant's request for additional age–50 retirement service credit be denied.

Claimant timely filed exceptions to the hearing examiner's recommendation. Upon review, the Board found that the hearing examiner's findings of fact, conclusions of law and discussion are supported by the record and in accord with the law.

However, the Board made minor typographical corrections to two of the hearing examiner's findings of fact. The Board also denied Claimant's five exceptions. As such, the Board entered an order accepting and adopting the hearing examiner's opinion, as modified, and denying Claimant's request to be granted age 50 superannuation retirement benefits for his service with the DOC between December 1, 1983 and July 28, 2006.

In this appeal,[3] Claimant states that since his job duties changed in 2000 when he was given responsibility to evaluate the various DOC libraries, his brief will focus on the period from December 1, 1983 through 2000.[4] Claimant argues that since the Board does not dispute that he spent large amounts of time in the field as a manager and supervisor of the recreational programs he created and managed for the facilities operated by the DOC, it is a question of law as to whether Claimant was a correction officer as defined in Section 5102 of the Retirement Code.

Claimant argues that the Board's interpretation of the definition of correction officer is contrary to its duty to liberally interpret the law in favor of SERS' members and it circumvents the express language of the Retirement Code. Claimant contends that since his principal duty as Therapeutic Activities Manager/Activities Coordinator required that he spend the

---

**3.** Our review of an administrative board's final adjudication is limited to determining whether the board committed an error of law, whether constitutional rights were violated and whether necessary factual findings are supported by substantial evidence. *Chuk v. State Employees' Retirement System,* 885 A.2d 605, 608 n. 9 (Pa.Cmwlth.2005). As to questions of law, this Court exercises plenary review.

"Questions of resolving conflicts in the evidence, witness credibility, and evidentiary weight are properly within the exclusive dis-

cretion of the [Board] and are subject to only limited review by this court." *Beardsley v. State Employees' Retirement Board,* 691 A.2d 1016, 1018 (Pa.Cmwlth.1997).

**4.** As the Board points out, there is no support for Claimant's statement in his brief, without citation, that SERS has a policy that if an individual has 20 years or more service as a correction officer in his or her overall state service, he or she will be eligible for full age 50 superannuation retirement benefits.

vast majority of his work time inside the DOC's correctional facilities developing, directing and running the prison system's therapeutic activities program for inmates, his principal duty was the direct therapeutic treatment, care, custody and control of inmates. Claimant argues that this direction was always performed in continuous contact with inmates. Claimant argues further that he performed the duties, as set forth in the position descriptions, of both a Corrections Activities Manager 1 and 2 as his principal duty from December 1, 1983 through 2000, except that he had this duty for all the DOC institutions. Thus, Claimant contends, granting him age 50 superannuation retirement service credit is very much in line with granting Correction Activities Managers with age 50 superannuation retirement credit.

■ Initially, we note that "even though the contract which the employee has with the Commonwealth must be liberally construed," *Cosgrove v. State Employes' Retirement Board*, 665 A.2d 870, 871 (Pa. Cmwlth.1995), "a liberal administration of the retirement system does not permit the board to circumvent the express language of the Code...." *Dowler v. Public School Employes' Retirement Board*, 153 Pa. Cmwlth. 109, 620 A.2d 639, 644 (1993). "Thus, an employee has only those rights created by statute and none beyond it." *Bittenbender v. State Employees' Retirement Board*, 154 Pa.Cmwlth. 11, 622 A.2d 403, 405 (1992).

■ In construing the statutory definition of "correction officer", we are mindful that we must be guided by the rule of construction that, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Statutory Construction Act of 1972, 1 Pa. C.S. § 1921(b); *Bowers v. State Employes' Retirement Board*, 29 Pa.Cmwlth. 561, 371

A.2d 1040 (1977). However, as an agency charged with the execution and application of the Retirement Code, "the Board is entitled to considerable deference in its construction of the Retirement Code and the regulations promulgated thereunder; therefore, the Board's construction may not be overturned unless it is clearly erroneous." *Gowden v. State Employees' Retirement Board*, 875 A.2d 1239, 1241 n. 4 (Pa.Cmwlth.2005) (quoting *McCormack v. State Employees' Retirement Board*, 844 A.2d 619, 622 n. 2 (Pa.Cmwlth.2004)).

Upon review of the definition of correction officer as defined in Section 5102 of the Retirement Code and the Board's findings based on the evidence presented, we agree with the Board that Claimant is not entitled to age 50 superannuation retirement benefits for his service with the DOC between December 1, 1983 and July 28, 2006. As pointed out by the Board, Claimant bases his argument that he falls within the definition of correction officer on the idea that since it is undisputed that his job responsibilities brought him into contact with inmates of correctional institutions on a regular basis and required him to make regular visits to those facilities, he was a correction officer within the meaning of the Retirement Code. However, based on the explicit and unambiguous language of the definition of correction officer, as set forth in Section 5102 of the Retirement Code, we find no error by the Board's rejection of Claimant's assertion that the Board stretch the definition of "correction officer" beyond the borders of its explicit provisions by interposing the words "or contact with" between the words "of" and "inmates" in the definition of correction officer. Contact with inmates and spending large amounts of time in various DOC's institutions simply does not satisfy the plain and unambiguous requirement that the employee have as his **principal**

duty the direct therapeutic treatment, care, custody and control of inmates.

■ As found by the Board, Claimant's position with the DOC Central Office was that of an administrator and/or coordinator. He was in charge of creating and coordinating activities for inmates within the DOC. Claimant visited correctional institutions not to control and oversee the individual inmates who took part in the DOC's recreational programs, but instead to review and evaluate the effectiveness of the recreational programs being conducted in the DOC's facilities. The Board found further that the evidence indicates that the activities managers and activities specialists at each individual institution, and not the Claimant, had the requisite care, custody, and control of the inmates who participated in the recreational programs. While Claimant may have had to train new personnel to undertake these jobs and/or closely supervise the implementation of new or different programs, those activities were a small part of his overall responsibility for activities programs and not the principal duties of his position.

In addition, the Board found that the security decisions made by Claimant were part of a generalized policy making and programming function and not the direct supervision and control of inmates participating in recreational programs. The Board pointed out that the activities managers and activities specialist are the first-line employees who supervise and oversee correction facility inmates while they participate in recreational programs and it was those employees who were responsible for making sure that the policies developed by Claimant were carried out.

In making these findings, the Board rejected the evidence presented by Claimant and accepted that of SERS, which was well within the Board's province. *Beardsley.* As Claimant does not challenge the forego-

ing findings of the Board, only the conclusion reached by the Board based on these findings, we find no error in the Board's conclusion that Claimant's principal duty was that of an administrator/coordinator and not the direct therapeutic treatment care, custody and control of inmates.

■ We also conclude that Claimant's reliance on the job descriptions of a Corrections Activities Manager 1 and 2 to support his argument that he should be deemed a correction officer, is misplaced. Claimant was charged with the burden of proving that **his** job duties/description required him to be responsible for the direct therapeutic treatment, care, custody and control of inmates as his principal duty. Moreover, the June 2003 job description that was submitted into evidence by SERS describing Claimant's duties does not specifically state, as does the job descriptions for Corrections Activities Manager 1 and 2, that Claimant was responsible for the direct therapeutic treatment, care, custody and control of inmates. It was well within the province of the Board to reject Claimant's testimonial descriptions of his duties and the job descriptions for positions other than his own and accept contrary evidence such as the actual duties listed in Claimant's written job description in finding that Claimant's principal duty was not the direct therapeutic treatment, care, custody and control of inmates. *See Beardsley; Graff v. State Employes' Retirement System Board,* 72 Pa.Cmwlth. 605, 457 A.2d 596 (1983) (Resolutions of credibility are within the province of the Board; therefore, the Board properly relied upon the claimant's sedentary job description and gave no credence to claimant's testimonial description of his actual working conditions in concluding that the claimant was not entitled to a disability annuity.).

Finally, Claimant argues that the Board erred by accepting the conclusion of three

of the DOC's personnel supervisors, who are not attorneys, that just because he had an office at the DOC's Central Office, he does not meet the definition of correction officer. The bright line test that no one assigned to Central Office would be eligible for age 50 superannuation retirement benefits is contrary to the express wording of the Retirement Code. Claimant contends that the 1991 amendments to the Retirement Code increased the scope of employees eligible for age 50 retirement credit. Claimant points out that the definition of correction officer was amended in 1991 to include the phrase "assigned to the Department of Correction"; therefore, when a liberal reading of the definition of correction officer is utilized, one does not even have to be an employee of the DOC to be a correction officer. Claimant argues that a liberal reading of the definition of correction officer results in any full time employee, regardless of classification, assigned to the DOC being a correction officer and it is not limited to employees billeted in penal institutions.

■ We agree with Claimant that the definition of correction officer does not necessarily mandate that the employee be an actual employee of the DOC and that the definition is not limited to employees billeted in penal institutions. The flaw in Claimant's argument is that he is cherry picking certain phrases of the definition and omitting others to expand the definition beyond its boundaries. The definition of correction officer must be read in its entirety and even a liberal reading of the plain language in its entirety clearly refutes Claimant's contention that any full time employee assigned to the DOC must be deemed a correction officer. The requirement remains in the definition that, in order to be considered a correction officer, the full time employee's principal duty must be "the care, custody and control of inmates or direct therapeutic treatment, care, custody and control of inmates of a penal or correctional institution." Section 5102 of the Retirement Code, 71 Pa.C.S. § 5102. As stated previously herein, Claimant failed to prove that the foregoing was his principal duty as Activities Coordinator.

Accordingly, the Board's order is affirmed.

## ORDER

AND NOW, this 2nd day of November, 2009, the order of the State Employees' Retirement Board entered in the above-captioned matter is affirmed.